CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
February 27, 2025
LAURA A. AUSTIN, CLERK
BY: s/B. McAbee
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal Action No. 4:21-cr-00010 |
| v.                       ) | |
|                          ) | By: Elizabeth K. Dillon |
| GLEN RAY DOWELL          ) | Chief United States District Judge |
|                          ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant Glen Ray Dowell's motion for compassionate release. (Dkt. Nos. 149, 165.) Dowell had originally filed a *pro se* motion on February 2, 2024, (Dkt. No. 149), asking for a sentence reduction under Amendment 821 to the U.S. Sentencing Guidelines and compassionate release. The court denied Dowell's request for a sentence reduction under Amendment 821 (Dkt. No. 159) but appointed the Federal Public Defender to represent Dowell for purposes of his motion for compassionate release. (Dkt. No. 160.) By and through counsel, Dowell filed a supplemental motion for compassionate release pursuant to the First Step Act on June 25, 2024. (Dkt. No. 165.) The United States responded in opposition to that motion (Dkt. No. 168), with Dowell submitting a response and amended response to support his motion. (Dkt. Nos. 169, 170.) For the reasons stated below, Dowell's motion for compassionate release will be denied.[1]

I. BACKGROUND

Dowell is currently serving a 120-month prison sentence after pleading guilty to distributing five grams of more of methamphetamine under 21 U.S.C. §§ 841(a)(1),

---

[1] As the government notes, Dowell has filed a notice of appeal from his conviction and sentence, and that appeal remains pending. Pursuant to Federal Rule of Criminal 37, however, the court may deny the motion despite the pending appeal. Fed. R. Crim. P. 37; *see also United States v. Bunch*, 828 F. App'x 185, 185 (4th Cir. 2020) (explaining that when a district court is faced with a motion for compassionate release while the movant's appeal is pending, the court may "defer considering the motion, deny the motion, or issue an indicative ruling") (citing *United States v. Pawlowski*, 967 F.3d 327, 329 n.4 (3d Cir. 2020)).

841(b)(1)(B), possessing with intent to distribute a measurable quantity of cocaine under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. §§ 924(c), 924(c)(1)(A). (Dkt. No. 127.) Dowell is currently incarcerated at FCI McKean in Pennsylvania, with a projected release date in early 2030.[2]

Dowell contends in his motion for compassionate release that his medical conditions, exacerbated by both prison conditions and specific instances of inadequate medical care, justify a reduction in his sentence. He also claims that his mother's health and the combination of all of his circumstances warrant relief.

## II. ANALYSIS

### A. Compassionate Release Under the First Step Act

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence under certain circumstances. As amended by the First Step Act and in pertinent part,[3] the statute provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –

---

[2] https://www.bop.gov/inmateloc/ (last visited Feb.27, 2025).

[3] Prior to the First Step Act of 2018, only the Bureau of Prisons could seek relief in court under the statute. The First Step Act changed the statute to allow a federal inmate to file a motion for compassionate release directly with the court after exhausting his administrative remedies.

> (i) extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C. § 3582(c)(1)(A)(i). If a court finds extraordinary and compelling reasons to reduce a sentence, it must then consider the 18 U.S.C. § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's sentence. *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021).

In addition to satisfying the above, the reduction must be "consistent with [the] applicable policy statement[] issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statement for compassionate release is found in U.S. Sentencing Guidelines (U.S.S.G.) § 1B1.13 and Commentary. That section was amended, effective November 1, 2023, and now provides an expanded list of "extraordinary and compelling reasons" warranting compassionate release. *See* U.S.S.G. § 1B1.13 (Nov. 2023).

Dowell's motion under § 3582(c)(1)(A) thus requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors. As the movant, "[a] defendant seeking compassionate release has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020); *see also United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). ("A movant for compassionate release bears the burden of showing why the § 3553(a) factors justify a modified sentence."); *United States v. Hargrove,* 30 F.4th 189, 195 (4th Cir. 2022) (noting that the inmate provided information "to carry his burden of demonstrating that his medical conditions served as an extraordinary and compelling reason for release"). Additionally, "compassionate release is a

3

rare remedy." *United States v. Horton*, No. CR ELH-19-115, 2023 WL 3390910, at *8 (D. Md. May 10, 2023) (citing *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019)).

**B. Exhaustion**

The court first considers exhaustion as the threshold requirement for obtaining relief under § 3582(c)(1)(A). *United States v. Muhammad*, 16 F.4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and *either* fully exhausts all administrative rights to appeal the Bureau's decision *or* waits 30 days from the date of their initial request to file a motion in the district court." *Id.* at 131. Dowell filed a request to the Bureau of Prisons in May 2024 based on health issues exacerbated by his living conditions, and alleges he never heard back regarding those issues.[4] Because the government states that it "does not dispute that Mr. Dowell has adequately satisfied the statute's exhaustion requirement," (U.S. Opp'n 2 n.2, Dkt. No. 168), the court will treat the requirement as satisfied.

The court focuses next on whether Dowell has shown "extraordinary and compelling" circumstances to render him eligible for a sentence reduction.

**C. Extraordinary and Compelling Reasons**

Dowell points to four grounds for compassionate release: (1) poor conditions at his place of incarceration; (2) his health conditions and lack of adequate care; (3) his mother's age and health; and (4) his post-sentencing rehabilitation. He then suggests that all of his circumstances constitute sufficient "other reasons" under U.S.S.G. 1B1.13(b)(5) to warrant relief. The court addresses each in turn.

---

[4] Defense counsel notes that this representation has not been confirmed with official documentation from the Bureau of Prisons regarding the existence of Dowell's request. (Dkt. No. 165 at 3.)

### 1. Poor conditions at the prison

Dowell describes several issues with FCI McKean. He argues that many of the issues can be traced to an understaffed and overpopulated prison. Dowell contends that his housing unit is frequently placed on administrative lockdown. During these lockdowns, he and his cellmate are confined to their cell for prolonged periods. He particularly notes a time during which he was confined to his cell for an uninterrupted period from July 3 to July 8, 2024. Dowell argues that the shortage of staff has also affected his ability to complete a drug prevention class which would help reduce his recidivism points. Additionally, Dowell notes the lack of air conditioning and bouts of no hot water or drinking water. (S*ee generally* Dkt. Nos. 149, 165, 170.)

These alleged issues all concern the conditions of Dowell's confinement, which generally should not be challenged through a motion for a reduction in sentence. *See United States v. Cooper*, Case No. 2:16-CR-00022, 2024 WL 2095945, at *2 (S.D.W. Va. May 9, 2024) (noting that conditions of confinement generally should not be challenged through a motion for reduction in sentence, but through a claim under *Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), or motion for habeas corpus relief pursuant to 28 U.S.C. § 2241) (citations omitted); *United States v. Lumpkin*, Case No. 2:12cr192, 2020 WL 7123109, at *2 n.3 (E.D. Va. Dec. 4, 2020) (noting that challenges to conditions of confinement cannot be pursued through a compassionate release motion). Certainly, an understaffed and overpopulated prison can contribute to poor prison conditions. Nonetheless, even if Dowell's conditions of confinement could be challenged here, the court concludes that Dowell's alleged conditions at FCI McKean do not rise to the level of an "extraordinary and compelling" reason for compassionate release. *See Cooper*, 2024 WL 1095945, at *2 (reaching same conclusion as to allegations that prison was understaffed, had long lockdown periods and

frequent plumbing malfunctions, and where inmates alleged abuse occurred there). *Cf. Blackwell v. United States*, No. 5:18-CR-00999-TLW-2, 2023 WL 7002560, at *5 (D.S.C. Oct. 24, 2023) ("Generally, harsh conditions of imprisonment occasioned by the COVID-19 pandemic are not, without more, sufficiently extraordinary and compelling to warrant compassionate release.") (citations omitted). Thus, the conditions of Dowell's confinement do not entitle him to relief through his current motion.

### 2. Dowell's health conditions

As noted, the United States Sentencing Commission recently amended the section of the guidelines that addresses motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that "extraordinary and compelling" reasons warrant a reduction. *See* U.S.S.G. § 1B1.13.

A defendant may show an extraordinary and compelling reason for a sentence reduction based on medical circumstances when he can demonstrate the following:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
>> (i) suffering from a serious physical or medical condition,
>>
>> (ii) suffering from a serious functional or cognitive impairment, or
>>
>> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1)(A)–(C).

Dowell suffers from chronic obstructive pulmonary disease (COPD) and asthma. He claims that these medical conditions, combined with an alleged lack of adequate care, put him at risk of serious deterioration in health or death. Dowell points to two episodes in January of 2023 during which he alleges he suffered severe coughing fits and passed out while in the Roanoke City Jail. (Dkt. No. 165 at 5.) On January 3, 2023, Dowell reported coughing fits and lightheadedness for which he received nebulizer treatments. (Dkt. No. 165-2 at 4–5.) He alleges that 15 days later, on January 18, he passed out from a similar coughing fit. (*Id.* at 4.) The records are not entirely clear on if, or when, Dowell reported passing out on that second date. Jail records state, "He reports that he 'developed a coughing fit and passed out.' He did not report this at the time however." (*Id.*) In the records provided to the court, Dowell indicates in one place that he was taken out in a wheelchair after an episode (Dkt. No. 149 at 6), but in another place he questions how he could have reported such an incident while passed out. (Dkt. No. 165 at 5 n.1.) Although the circumstances of both medical incidents are not entirely clear to the court, it is evident that he received treatment in response to both episodes.

Dowell asserts that similar wheezing and shortness of breath issues have continued while in BOP custody. In particular, he contends that he left Roanoke City Jail with an inhaler but needed a new one in March 2024. Dowell claims he made several requests to receive a new inhaler, starting in mid-March 2024, but he did not receive one until June 10. Furthermore, Dowell expresses great concern that, because he is not allowed to carry an epinephrine

7

autoinjector ("EpiPen"), the conditions of his confinement are such that guards would likely not reach him in time to provide life-saving medical care in the event of a medical emergency.

In addition, and according to the Presentence Investigation Report ("PSR"), Dowell reports having been diagnosed with various mental health conditions, although not all of those have been confirmed by medical records. (*See* PSR ¶¶ 101–03, Dkt. No. 126.) The court also noted some of these issues when imposing his sentence. (*See* Statement of Reasons, Dkt. No. 128.) Dowell contends that he has been forced to stop taking mental health medication that he has been on for twenty years. That medication is prescribed to be taken at night, shortly before bed, but there is no medical staff available to distribute the medication in the evenings. (*See generally* Dkt. Nos. 149, 165, 170.) It appears, however, that Dowell has either requested or may be receiving a different mental health medication. (*See* Dkt. No. 170-1, at 7, 8 (describing that he can be switched to a different medication, "rimron," which the court believes is a reference to Remeron, a medicine used to treat major depressive disorder).[5]

The court has considered all the information Dowell has presented. First, none of the conditions of which Dowell complains could be properly described as a "terminal illness" under subsection (A). As it pertains to subsection (B), COPD and asthma are legitimate medical conditions that can become a serious physical or medical condition. However, Dowell has not shown that his ailments reach the level of "a serious physical or medical condition" or cause "a serious functional or cognitive impairment" as contemplated by subsection (B), which also requires that any such condition or impairment "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and [be one] from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). The same is true of his

---

[5] *Remeron*, Drugs.com, https://www.drugs.com/Remeron.html (last visited Feb. 27, 2025).

mental health conditions.  Dowell may be able make such a showing at some point in the future, but he has not here.

Subsection (C) of the guidelines requires Dowell to show that he is suffering from a medical condition requiring long-term or specialized medical care that is not being provided. The court assumes, for purposes of this opinion, that COPD and asthma constitute "medical condition[s] that require[] long-term or specialized medical care . . . ." But Dowell also must show that the required medical care is "not being provided" and without it, he "is at risk of serious deterioration in health or death."  U.S.S.G. § 1B1.13(b)(1)(C).

This is a showing that Dowell has not made.  Dowell received nebulizer treatment after his coughing episode at Roanoke City Jail, and, in any event, he is no longer housed there.  With regard to treatment at his current facility, Dowell has alleged an excessive delay in receiving a new inhaler after being transferred to FCI McKean, but he nevertheless has received one to treat his asthma.[6]

Likewise, Dowell also alleges that FCI McKean will not provide him with an EpiPen (which contains the medicine epinephrine) because it has a needle.  From the record, the court cannot determine if an EpiPen was prescribed to treat Dowell's medical conditions or Dowell simply wanted it.  See De'lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013 ("[A] prisoner does not enjoy a constitutional right to the treatment of his or her choice[;] the treatment . . . must nevertheless be adequate to address the prisoner's serious medical need.").  Moreover, Dowell's medical records reflect that he was prescribed Albuterol (Dkt. No. 170-1 at 1), which is "the therapy of choice for the relief of bronchospasm [while] epinephrine and metaproterenol are not

---

[6] A three-month delay in receiving a prescribed medication is concerning, although the record before the court is not clear as to precisely when the BOP became aware of Dowell's asthma.  In any event, the BOP seems to have rectified the situation as to the inhaler.  To the extent Dowell believes that either the conditions of his confinement or the allegedly inadequate medical care he received rises to the level of a constitutional violation, he may file an appropriate civil rights action in the appropriate court after exhausting any administrative remedies.

recommended due to the potential for excessive cardiac stimulation." Federal Bureau of Prisons Clinical Guidance, *Management of Asthma* (2013, reformatted 2018), available at https://www.bop.gov/resources/health_care_mngmt.jsp, at "Asthma" (last visited February 27, 2025). Thus, it appears that Dowell is receiving treatment for his physical medical conditions.

Similarly, Dowell has not presented sufficient information about his mental health disorders to show that they would qualify as "extraordinary and compelling" under any subsection of U.S.S.G. § 1B1.13(b)(1). First, it is unclear whether he is receiving some other medication as a substitute to his previous medication. And neither counsel's response nor the medical records make clear what effects, if any, he is experiencing as a result of his mental health from being off any medication. Nor does Dowell identify how the lack of any such medication is causing him to be unable to care for himself or for his health to otherwise deteriorate.

In short, Dowell has not presented evidence to show that he is not receiving medical care to an extent that it constitutes a sufficient reason to qualify under § 3582(c)(1)(2). *Cf. United States v. Young*, No. 4:18CR00017, 2024 WL 1653773, at *2 (W.D. Va. Apr. 17, 2024) (denying compassionate release for lack of extraordinary and compelling reasons where defendant had alleged a variety of mental and physical health disorders and there had been some delays in obtaining medical treatment, but his medical records reflect that he was repeatedly provided access to doctors and medical treatment); *United States v. Freeman*, 617 F. Supp. 3d 386, 397 (E.D. Va. 2022) ("[C]hronic conditions that can be managed in prison . . . are not a sufficient basis for compassionate release.") (citations omitted). Because he has not shown extraordinary

or compelling circumstances based on his health conditions, Dowell's request for a reduction on that basis will be denied.[7]

### 3. The health conditions of Dowell's mother

The Guidelines also recognize a limited number of family circumstances that may constitute extraordinary and compelling circumstances warranting a reduction in sentence. Specifically, U.S.S.G. § 1B1.13(b)(3) identifies the following four circumstances:

> (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D).

Dowell contends that his 84-year-old mother is "slowly losing her mental health." (Dkt. No. 170-3 at 7.) Although it is understandable that Dowell would like to help a family member, he does not in any way indicate that his mother is incapacitated, nor does he state that he is his mother's only available caregiver. Thus, he does not fall into any of the circumstances listed

---

[7] Further, and as discussed *infra* at Section II-D, even if Dowell could show extraordinary and compelling reasons, the court would not reduce his sentence based on the 18 U.S.C. § 3553(a) factors.

11

under the sentencing guidelines. As such, compassionate release is not warranted on family circumstance grounds either.

### 4. Rehabilitation

Dowell correctly notes that "although rehabilitation is not by itself an extraordinary and compelling reason for early release . . . it may be considered in combination with all other circumstances in determining whether early release is acceptable." (Dkt. No. 165 at 5.) *See United States v. Davis*, 99 F. 4th 647, 659 (4th Cir. 2024) (rejecting the argument that rehabilitation can only be considered in § 3553(a) analysis and stating that it may be considered "as one factor among several" in determining whether a movant has shown "extraordinary and compelling" circumstances). Although the court acknowledges Dowell's continued efforts towards rehabilitation and has hope that he will continue bettering himself, it does not find that his rehabilitation efforts, either alone or in combination with all other circumstances, are enough to constitute extraordinary and compelling reasons to grant a compassionate release at this time. *Cf. Centeno-Morales*, 90 F.4th at 279 (affirming denial of compassionate release motion and noting that completion of a few vocational courses, coupled with two disciplinary infractions, was not a "mountain" of mitigating evidence of post-sentencing rehabilitation and contrasting those facts with a case where an inmate had been incarcerated for almost two decades, had become a respected tutor for other inmates and had such "exemplary behavior" that she was moved into a low-security facility).

### 5. U.S.S.G. § 1B1.13(b)(5) – Other Reasons

In his supplemental reply, Dowell advances the argument that his circumstances are of the type contemplated in U.S.S.G. § 1B1.13(b)(5), an argument the government disputes. That section of the sentencing guidelines states:

> Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

U.S.S.G. § 1B1.13(b)(5). Dowell argues that his lack of known disciplinary proceedings while in the BOP, his medical condition, and his alleged inability to properly receive treatment, rise to the level of extraordinary and compelling circumstances. (Dkt. No. 170 at 2.) For its part, the government contends that the narrow catch-all provision cannot be utilized where the reasons given correlate to other listed reasons in § 1B1.13(b)(1)–(4). (U.S. Opp'n 4 n.3.) It also argues that Dowell's circumstances are not "similar in gravity to those described in paragraphs (1) through (4)."

The court need not resolve the applicability of this section in this case. Even if the court were to assume, for purposes of this opinion, that Dowell could satisfy the extraordinary and compelling threshold on account of § 1B1.13(b)(5)—or any of the other bases the court already has rejected—the 18 U.S.C. § 3553(a) factors compel the court to deny the requested relief, as the court discusses next.

### D. § 3553(a) Factors

Even where a defendant shows "extraordinary and compelling" circumstances, a district court still has discretion as to whether or not to reduce his sentence. The court exercises that discretion by looking to the sentencing factors set forth in § 3553(a). Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a). A district court need not provide an

exhaustive explanation or address every argument raised by the movant, but it must "set forth enough to satisfy [the appellate] court that it has considered the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority, so as to allow for meaningful appellate review." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024).

In Dowell's case, the sentencing factors counsel against compassionate release. Dowell was convicted of selling drugs and being a felon in possession of a firearm. The firearm, an unregistered and loaded short-barreled 12-gauge shotgun, was found in close proximity to drugs when his residence was searched. These are serious offenses.[8]

Additionally, Dowell has a very significant criminal history. Prior to this offense, he had been committing crimes for more than three decades. These crimes included drugs and weapons charges, and also a number of assault and battery convictions on family members. As a result of his many convictions, he was a criminal history category of VI. Prior to this offense, he had been subject to six separate terms of supervision, and he had violated all of those terms. Moreover, he committed this offense while under a criminal justice sentence. Based on this significant criminal history, there is a great need to promote respect for the law and to protect the public, to deter, and to punish. A reduced sentence would not be sufficient to serve those purposes. While Dowell has shown efforts at rehabilitation, and the court applauds those efforts, the court does not find that the sentencing factors warrant release, especially when he has served less than half of his lengthy sentence.

---

[8] The United States also urges the court to consider an alleged threat made by Dowell to a confidential informant in another case, but the court ruled at sentencing that the government failed to prove, by a preponderance of the evidence, that Dowell used violence or made a credible threat to use violence. (*Compare* U.S. Opp'n 1, 8 *with* Sent. Tr. 26–27, Dkt. No. 141.)

## III.  CONCLUSION

For the reasons stated above, it is hereby ORDERED that Dowell's motion for compassionate release is DENIED.  The clerk is directed to provide a copy of this order to Dowell and to all counsel of record.

Entered: February 27, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge